Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**MARC SCHESSEL,**<br><br>　　　　　　　Defendant. | **Criminal Action No.: 22-0374 (ES)**<br><br>**MEMORANDUM OPINION** |

**SALAS, DISTRICT JUDGE**

　　Pending before the Court is the Government's motion to authorize alternative victim notification procedures pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA"). (D.E. No. 17 ("Mov. Br.")). Defendant filed a brief in opposition to the motion, and the Government filed a reply. (D.E. No. 22 ("Opp.") & D.E. No. 25 ("Reply")). For the following reasons, the motion is **GRANTED-in-part** and **DENIED-in-part**.

　　*Background.* On May 31, 2022, Defendant was charged with two counts of securities fraud under 15 U.S.C. §§ 78j(b) and 78ff (Count 1) and 18 U.S.C. § 1348 (Count 2). (D.E. No. 1). According to the indictment, between March and April 2020, Defendant, as Chief Executive Officer of a publicly traded healthcare company ("Company-1"), participated in a scheme through which he made material misrepresentations and omissions to investors, potential investors, and the Securities and Exchange Commission ("SEC") regarding Company-1's procurement of COVID-19 testing kits to fraudulently increase and maintain share prices of Company-1's securities. (*Id.* ¶¶ 1 & 3–5). The Government specifically alleges that, on or about April 13, 2020, Defendant caused Company-1 to issue a materially misleading press release regarding its anticipated procurement of COVID-19 testing kits in the early days of the COVID-19 pandemic that caused

1

its stock price to increase. (*Id.* ¶¶ 5.k. & 5.l.). On or about April 21, 2020, the SEC halted trading in the securities of Company-1 after the FDA confirmed that Company-1's supplier was not permitted to distribute COVID-19 testing kits in the United States. (*Id.* ¶¶ 5.x. & 5.y.). As a result of the alleged scheme, investors lost approximately $116 million by purchasing Company-1's shares at artificially inflated prices and selling those shares at a loss. (*Id.* ¶ 5.z.).

On June 7, 2022, Defendant pled not guilty to each count in the indictment. (D.E. No. 8). On July 27, 2022, the Government filed the instant motion to authorize alternative victim notification procedures under the CVRA, which was fully briefed. (*See generally* Mov. Br., Opp. & Reply).

*Legal Standard.* Under the CVRA, crime victims have certain enumerated rights, including the right to "reasonable, accurate, and timely notice" of any public court proceedings. 18 U.S.C. § 3771(a)(2). The Court has an affirmative obligation to ensure that this enumerated right is afforded. *Id.* § 3771(b)(1). A crime victim is defined as one who is "directly and proximately harmed as a result of the commission of a Federal offense." *Id.* § 3771(e)(2)(A). "Victims' rights under the CVRA begin well before a conviction; thus, the status of 'victim' may be based on allegations rather than proof." *United States v. Saltsman*, No. 07-641, 2007 WL 4232985, at *1 (E.D.N.Y. Nov. 27, 2007); *see also United States v. Turner*, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005).

Under the CVRA's "multiple crime victims" provision, "where the court finds that the number of crime victims makes it impractical to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings." 18 U.S.C. § 3771(d)(2). Accordingly, this provision allows courts to approve efforts to notify victims of federal crimes the Government

is prosecuting where individual notice would be impractical. *Id.*; *see also United States v. Saferstein*, No. 07-0557, 2008 WL 4925016, at *2 (E.D. Pa. Nov. 18, 2008).

In the absence of binding precedent from the Third Circuit regarding what constitutes a "reasonable procedure" under 18 U.S.C. § 3771(d)(2), the Court has consulted the decisions of the Second Circuit and other district courts which have found a number of notification efforts to be "reasonable" under the CVRA. The Second Circuit has set forth that the determination of what is a "reasonable procedure" is left to the discretion of the district court. *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 563 (2d Cir. 2005) ("Most of the rights provided to crime victims under the CVRA require an assessment of 'reasonableness'" and "[t]he district court is far better positioned to make these assessments and to determine what constitutes 'a reasonable procedure' for effecting these rights than a court of appeals.") (citation omitted). Thus, "reasonable procedure" determinations may vary with each case given the district court's "proximity to the particular facts and needs of victims that also will likely vary with each case." *United States v. Rubin*, 558 F. Supp. 2d 411, 422 (E.D.N.Y. 2008) (citing *In re Huff*, 409 F.3d at 562–63). Notably, district courts have routinely authorized the use of a website by the Government to notify crime victims under the CVRA where thousands of victims are potentially affected by the charged conduct. *See, e.g.*, *United States v. Babich*, 301 F. Supp. 3d 213, 216–18, (D. Mass. 2017) (holding alternative victim notification through FBI and U.S. Attorney's Office websites was reasonable under the CVRA where alleged RICO conspiracy potentially affected thousands of victims); *Saltsman*, 2007 WL 4232985 at *2 (holding alternative victim notification through U.S. Attorney's Office website was reasonable under the CVRA where alleged securities fraud and money laundering scheme potentially affected thousands of victims).

*Discussion.*  The Government submits that the victims of the charged securities fraud scheme are the thousands of "market participants who traded the stock of Company-1 . . . between approximately March 2020 and approximately April 2020." (D.E. No. 17-1 at 1; *see also* Mov. Br. at 2–4).  Given the large number of potential victims in this case, the Government argues that it is impractical to identify and provide individualized notice to each crime victim pursuant to the CVRA.  (Mov. Br. at 4).  Accordingly, the Government requests authorization to provide notice to victims by maintaining a Department of Justice website.  (*Id.* (citing *United States v. Marc Schessel*, DEP'T OF JUSTICE, https://www.justice.gov/criminal-vns/case/Schessel (last visited Oct. 24, 2022) ("DOJ Website"))).  The DOJ Website would provide "a summary of the case, information regarding the case's status, and other significant case-related documents." (*Id.*).  The DOJ Website would also provide "an e-mail address and telephone number for a Victim Assistance Line through which individual potential crime victims could contact the [DOJ] with questions regarding the case." (*Id.*).

Defendant challenges the Government's motion on three grounds.[1]  The Court will address each argument in turn.

*First*, Defendant argues that not all market participants the Government seeks to notify—those who traded Company-1 securities between approximately March through April 2020—qualify as crime victims under the CVRA.  (Opp. at 4–5).  Specifically, Defendant notes that the indictment alleges that Company-1 issued the press release regarding its procurement of COVID-19 testing kits on or about April 13, 2020, and the SEC halted trading of Company-1

---

[1] The Government argues that Defendant does not have standing under the CVRA to oppose the Government's motion. (Reply at 2). While the CVRA provides that "[a] person accused of the crime may not obtain any form of relief under this chapter," 18 U.S.C. § 3771(d)(1), the alternative notification procedure may, as Defendant argues here, implicate a defendant's constitutional rights. *See, e.g.*, *United States v. Merrill*, No. 14-40028, 2014 WL 6387368, at *2 (D. Mass. Nov. 14, 2014) (considering defendants' arguments that the Government's proposed alternative notification procedures may taint the jury pool). Accordingly, the Court will consider Defendant's arguments to fashion a reasonable procedure under the CVRA that maintains his constitutional rights.

4

securities on or about April 21, 2020. (*Id.* at 6). Therefore, only market participants who traded Company-1 securities between approximately April 13 and April 21, 2020, could have suffered the alleged harm so as to qualify as "direct and proximate" victims of the charged conduct under the CVRA's "but for" cause analysis. (*Id.* at 5–6). *See also* 18 U.S.C. § 3771(e)(2)(A).[2] Defendant further argues that, even within this limited pool of potential victims, the Government has not shown harm caused by the charged conduct. (*Id.* at 6). In response, the Government argues that the market participants it seeks to notify may be considered crime victims under the "inclusive approach" employed by the District of Massachusetts in *Babich*. (Reply at 3–4 (citing 301 F. Supp. at 217 ("absent an affirmative reason to think otherwise, [the court] will presume that any person whom the government asserts was harmed by conduct attributed to a defendant . . . enjoys all the procedural and substantive rights set forth in § 3771"))). The Government further argues that even under Defendant's limited approach, "such a universe of victims would still number in the thousands and would be impractical to notify on an individual basis." (*Id.* at 4).

The CVRA's requirement "that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *In re Rendón Galvis*, 564 F.3d 170, 175 (2d Cir. 2009) (quoting *In re Antrobus,* 519 F.3d 1123, 1126 (10th Cir. 2008) (Tymkovich, J., concurring)). "The necessary inquiry is a fact-specific one." *Id.*[3] Here, the

---

[2] Defendant appears to further argue that the indictment does not allege that "the vendor" suffered a loss as a result of the charged conduct. (Opp. at 6–7). While it is not clear to whom "the vendor" refers, the Government seeks to notify only market participants as crime victims under the CVRA. (*See generally* Mov. Br.). Therefore, the Court bases its decision on the Government's request to notify market participants.

[3] The Government argues that requiring "but for" and proximate causation "conflates the notification procedures" of the CVRA "with the restitution process." (Reply at 3). The Court disagrees. The Government does not cite, and the Court has not located, relevant authority that distinguishes the analysis used to determine victim rights under the CVRA generally from that used to determine restitution rights under either the CVRA or the Mandatory Victim Restitution Act, 18 U.S.C. § 3663 ("MVRA"). In *Galvis*, the petitioner sought to enforce her rights to be heard before sentencing, to confer with the Government, and to receive restitution under § 3771(a)(4)–(6) of the CVRA; the petitioner additionally sought to enforce her right to restitution under the MVRA. 564 F.3d at 172, 174–175. The Second Circuit required "but for" and proximate causation to determine whether the petitioner could fairly be considered a victim so as to assert those enumerated rights, without distinguishing the analysis for restitution under

Government specifically alleges that Defendant caused Company-1 to issue a materially misleading press release on or about April 13, 2020 regarding its anticipated procurement of COVID-19 testing kits, causing its stock price to increase, and that the SEC halted trading in the securities of Company-1 on or about April 21, 2020.  (D.E. No. 1 ¶¶ 5.k.–5.l & 5.x.–5.y.).  The Government further alleges that, as a result of the scheme, market participants lost approximately $116 million by purchasing Company-1's shares at artificially inflated prices and selling those shares at a loss.  (*Id.* ¶ 5.z.).  Further, the Government submits that even in this more limited time frame, there are still thousands of potential victims of the alleged scheme.  (Reply at 4).  Thus, even assuming only market participants who traded Company-1 securities between approximately April 13 and April 21, 2020, suffered the alleged harm so as to assert their rights as victims under the CVRA, the Court is satisfied that such victims number in the thousands.[4]

*Second*, Defendant argues that the Government has failed to establish that individual notification would be impractical.  (Opp. at 7–11).  The Court disagrees.  Defendant specifically argues that "a significant portion" of the victim population "has already been identified in a separate civil stockholder action that was initiated and settled in the Southern District of New York on behalf of those who acquired Company-1 stock between April 13 and April 17, 2020."  (*Id.* at 8).  Defendant further identifies two instances during that civil action in which a "claims administrator" mailed a notice packet regarding the settlement to tens of thousands of potential class members and argues that this demonstrates the practicability of giving individual notice in this case.  (*Id.*).  In response, the Government argues that, unlike a civil action, the CVRA requires

---

either statute. *Id.* at 175–76; *cf. United States v. Sharp*, 463 F. Supp. 2d 556, 563 (E.D. Va. 2006) (noting the standards for victim rights under the CVRA and the MVRA "are virtually identical").

[4]  Defendant alternatively requests, without citation to legal authority, that the Court order the Government to "proffer facts that establish that the market participants and investors are victims before ruling on this motion." (Opp. at 7 n.6).  The request is denied.  As previously noted, victim status under the CVRA "may be based on allegations rather than proof." *See Saltsman*, 2007 WL 4232985, at *1.

multiple notifications throughout the course of a criminal action. (Reply at 4–6). Here, the Government represents that the victim pool, even adopting Defendant's limited approach, numbers in the tens of thousands, and notification to each individual victim regarding each court proceeding would be impractical. (*Id.* at 4 & 6). As such, the Court exercises its discretion in finding that alternative notification of the alleged thousands of victims here is reasonable.

*Third*, Defendant argues that the Government's proposed alternative procedure risks tainting the jury pool and depriving him of his right to a fair trial. (Opp. at 11–14). Specifically, Defendant states that the Government and the SEC published press releases on this case on the day the indictment was filed,[5] which already alerted the public to these allegations. (*Id.* at 11). Defendant argues that the Government's proposed procedure "provides yet another opportunity for the [G]overnment to quote allegations in the indictment, which [Defendant] vehemently disputes," and thus risks Defendant's right to a fair trial. (*Id.* at 11–12). Defendant argues that the proposed notification procedure should at least be modified to (i) "remove any recitations of allegations contained in the pleadings"; and (ii) "emphasize the language indicating that the defendant is presumed innocent unless and until proven guilty by moving this section to the top of the webpage and/or enlarging the font." (*Id.* at 14). In response, the Government argues that notification through the DOJ Website would not prejudice Defendant's trial rights; however, the Government does not specifically respond to Defendant's proposed modifications. (Reply at 6–9).

---

[5] *See* Press Release, Dep't of Justice, *Former CEO Indicted for Misleading Investors about COVID-19 Rapid Test Kits* (May 31, 2022), https://www.justice.gov/opa/pr/former-ceo-indicted-misleading-investors-about-covid-19-rapid-test-kits (last visited Oct. 24, 2022); and Press Release, *U.S. Sec. and Exch. Comm'n., SEC Charges Company and Former CEO with Misleading Investors about Sale of COVID-19 Testing Kits* (May 31, 2022), https://www.sec.gov/news/press-release/2022-94 (last visited Oct. 24, 2022).

"Recognizing the competing interests at stake, namely, the defendant['s] Sixth Amendment right to an impartial jury and a fair trial, the public's First Amendment right of access to proceedings and filings as well as the rights of potential victims, courts have imposed certain restrictions on such alternative notification procedures." *Babich*, 301 F. Supp. 3d at 217. In particular, "courts have held that any press releases and/or notices shall avoid reciting allegations contained in the pleadings and shall contain language indicating that the defendant is presumed innocent unless and until proven guilty." *Id.* at 217–18; *see also Merrill*, 2014 WL 6387368, at *2 (holding that "notices shall avoid reciting allegations contained in the pleadings except as is necessary to comply with the notification obligations, but such press releases and notices may refer readers to such pleadings"); *Saferstein*, 2008 WL 4925016, at *3 (approving a procedure to notify victims via two separate websites and a press release that summarized the counts in the indictment, but requiring that the foregoing include a statement that provided "An indictment is an accusation. A defendant is presumed innocent unless and until proven guilty.").

Courts have additionally limited alternative notification procedures to those necessary to provide adequate notice to the victims. For example, in *Babich*, the Government proposed "five separate alternative victim notification methods," including the maintenance of three separate websites, the issuance of one or more press releases informing the public about the websites, and the delivery of "blast emails" to victims. 301 F. Supp. 3d at 215–16. The court authorized the use of the first two of the proposed websites to provide victim notification, but denied the Government's request for the third website because the Government had not explained why a third website was necessary. *Id.* at 217. The court also authorized the use of press releases so long as they avoided reciting allegations contained in the pleadings, but denied the Government's request to send blast emails as "too vague." *Id.* at 217–18.

Here, the Government seeks to use one website for purposes of victim notification. (Mov. Br. at 4). The DOJ Website currently provides the following one-paragraph summary of the criminal charges in this case:

> In an indictment filed on May 31, 2022, Marc Schessel, former CEO of a publicly-traded health care company, was charged with two counts of securities fraud for his alleged participation in a scheme to mislead investors about the company's procurement of COVID-19 rapid test [kits] in the early days of the COVID-19 pandemic.

*See* DOJ Website. In addition, the DOJ Website provides a link to the indictment as well as a detailed recitation of the allegations in the indictment. *Id*. The Court finds that including a paragraph summarizing the allegations *as well as* a detailed recitation of the allegations unnecessarily repeats the allegations contained in the indictment and risks infringing on Defendant's constitutional rights. As such, in the course of providing victim notice in accordance with the CVRA, the Government is directed to avoid unnecessary repetition of the allegations, although such notices may include a link to the indictment. *See Merrill*, 2014 WL 6387368, at *2.

The DOJ Website also currently contains the following language:

> Presumption of Innocence: It is important to keep in mind that a criminal indictment is merely an allegation, and defendants are presumed innocent until proven guilty and that presumption requires both the court and our office to take certain steps to ensure that justice is served.

*See* DOJ Website. The Court is satisfied that the DOJ Website's current language adequately apprises readers of the presumption of innocence and does not need to be further emphasized. *See, e.g.*, *Babich*, 301 F. Supp. 3d at 217–18.

***Conclusion.*** In light of the guiding authorities discussed herein and upon the Court's careful review of the particular facts and arguments of both the Government and Defendant in this case, the Court finds, in its discretion, that victim notification by publication consistent with the

9

procedure described in this Opinion is a reasonable procedure that will both give effect to the CVRA and will not unduly complicate or prolong the proceedings.

Accordingly, the Government's motion is **GRANTED-in-part** and **DENIED-in-part**. The Court directs the Government to provide notice to alleged crime victims in accordance with the procedure described herein.  An appropriate Order accompanies this Memorandum Opinion.

**Dated:** November 21, 2022

*/s/ Esther Salas*
Esther Salas, U.S.D.J.
